

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2537 | **DATE** | 5/16/2003 |
| **CASE TITLE** | Bressner vs. Ambroziak, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. The Court grants defendants' motion to dismiss plaintiff's second amended complaint [55-1] with prejudice. Trial date of 5/27/03 is stricken. Case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 19 2003 date docketed | 60 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. Mailed by MD. | EO-7 FILED FOR DOCKETING 03 MAY 16 PM 4:32 | 5/16/2003 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| DM courtroom deputy's initials | | U.S. D.C. Date/time received in central Clerk's Office | MD mailing deputy initials | |

DOCKETED
MAY 1 9 2003

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KERMIT JAY BRESSNER,

    Plaintiff,

v.

SHIRLEE AMBROZIAK, DENNIS
AMBROZIAK, AMZO MAILING SERVICES,
INC. and HARRIS BANK PALATINE, N.A., as
Trustee under Trust Agreement dated May 12,
1998, and known as Trust Number 6938,

    Defendants.

No. 02 C 2537
Judge Joan H. Lefkow

## MEMORANDUM OPINION AND ORDER

Before this court is the second amended complaint filed by plaintiff Kermit Jay Bressner ("Bressner") against defendants Shirlee Ambroziak ("Shirlee"), Dennis Ambroziak ("Dennis"), Amzo Zip Mailing Services, Inc. ("Amzo") and Harris Bank Palatine, N.A., as Trustee under Trust Agreement dated May 12, 1998 and known as Trust Number 6938 ("trustee"). Plaintiff claims defendants engaged in a civil conspiracy against him (Count I) and violated the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 *et seq.*, (Count II). Furthermore, plaintiff seeks the imposition of a constructive trust (Count III). Defendants move for dismissal of plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Diversity Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332, in that plaintiff alleges that he is a citizen of Arizona and that all defendants are citizens of Illinois and that the amount in controversy exceeds $75,000. For the reasons set forth below, the court grants the motion to dismiss.



## STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Sanville* v. *McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## ALLEGATIONS FROM THE SECOND AMENDED COMPLAINT

In June 1982, Dennis and Shirlee Ambroziak (collectively, the "Ambroziaks") filed a Chapter 7 petition in bankruptcy court. Through an adversary proceeding, plaintiff obtained a judgment of nondischargeability against Dennis on a debt he owed plaintiff on a note in the amount over $485,000. Apart from this judgment, the debts of the Ambroziaks were discharged in October 1982. To plaintiff's great frustration, although he periodically "revived" the judgment, he has been unable to obtain satisfaction of the judgment. (Sec. Am. Compl. ¶ 14.) Plaintiff claims that the present value of the judgment exceeds $1.2 million.

Shortly after the Ambroziaks filed their bankruptcy petition, the United States Attorney for the Northern District of Illinois indicted Dennis for one count of mail fraud, 18 U.S.C. § 1341, and one count of criminal infringement of a copyright, 18 U.S.C. § 2319. On November 19, 1983, Dennis pled guilty to the counts and on January 20, 1994, the Honorable John F.

Grady, United States District Judge, imposed three-years probation on both counts to run concurrently and a $5,000 fine on the mail fraud count. On February 5, 1985, the United States Attorney moved to revoke Dennis's probation based on his failure to file federal income tax returns for 1982, 1983 and 1984, although he falsely claimed he had done so. Plaintiff does not allege whether the court revoked Dennis's probation. On plaintiff's information and belief, however, Dennis has not filed any federal income tax returns for over twenty years.

In March 1986, a fire of suspicious origin severely damaged the Ambroziaks' residence and disrupted Dennis's business. The Ambroziaks' claim on an insurance policy was rejected, a law suit ensued, and in November 1993 a jury sided with the insurance company. Despite their financial setbacks, Dennis and Shirlee were able to fund the restoration of their fire-damaged residence in 1989 by granting a contractor title to a property in Wisconsin (valued at $36,500, with an $18,000 mortgage and, by the way, this asset did not appear on the Ambroziaks' bankruptcy petition). The Ambroziaks subsequently sold this residence to satisfy the contractor's liens.

In 1992, Shirlee bought a house on 3.5 acres of land in Woodstock, Illinois for $470,000 (the "Bull Valley Property") and within a short period of time she and Dennis made significant improvements to the property, substantially enhancing its value. Moreover, since 1997, the Ambroziaks have transferred cash and assets off-shore by acquiring or investing in luxury vacation and/or retirement properties in Anguilla, a small British dependency located at the northern end of the Leeward Islands in the Caribbean.

At some unspecified point post-discharge, Shirlee (with Dennis's help behind the scenes) started Amzo, which operated for a period of time out of the Bull Valley Property. By 1996,

Shirlee expanded Amzo's operations into a 46,000 square-foot commercial building, located on west Chicago Avenue in Chicago, where Amzo currently employs some 30 employees. Shirlee bought this property for $700,000. Both the Bull Valley and the Chicago Avenue properties are held in land trusts of which Shirlee is the sole beneficiary. Plaintiff estimates the value of Amzo at approximately $1 million.

Plaintiff alleges that Dennis is a primary participant in the generation of wealth that is formally held by Shirlee and that the Ambroziaks have since the date of judgment conspired together to defraud plaintiff by hiding Dennis's assets and income so as to prevent plaintiff from collecting his judgment. Specifically, plaintiff alleges that the Ambroziaks conceal Dennis's involvement in Amzo by making Shirlee the sole officer, director and stock holder of Amzo and conceal Dennis's interest in the Chicago Avenue and Anguilla properties. Furthermore, plaintiff alleges Shirlee filed a federal income tax return at some unspecified point where she listed Dennis's social security number as "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." Moreover, plaintiff alleges that Shirlee executed land trust or bank loan applications in October 1992, February 1996, March 1996, January 1998, February 1998 and April 1998, where she failed to disclose (a) that Dennis worked at Amzo and was an important player in the business and (b) that Dennis had a "beneficial interest" in Amzo. In May 1998, Shirlee also caused a land trust to be created in which she named Dennis and their children as contingent beneficiaries and in June 1998, she mortgaged the Chicago Avenue property without disclosing (a) and (b) above. Plaintiff seeks the liquidation of assets belonging to Shirlee, which could satisfy the judgment if they belong to Dennis.

## DISCUSSION

Plaintiff alleges the following claims against defendants: civil conspiracy (Count I); violation of the UFTA (Count II); and imposition of a constructive trust (Count III). Defendants have moved to dismiss all the claims.

### A.   Count I: Civil conspiracy

To state a civil conspiracy claim, a plaintiff must allege (1) an agreement (2) by two or more persons (3) to perform an overt act or acts (4) in furtherance of the agreement or conspiracy (5) to accomplish an unlawful purpose or a lawful purpose by unlawful means (6) causing injury to another. *Nichols Motorcycle Supply, Inc.* v. *Dunlop Tire Corp.*, No. 93 C 5578, 1994 WL 698486, at *3 (N.D. Ill. Dec. 12, 1994). Defendants contend that plaintiff alleges no facts under the third element because he fails to show an overt act premised on tortious or unlawful conduct.

As set out in *Adcock* v. *Brakegate, Ltd.*, 164 Ill. 2d 54, 63, 645 N.E.2d 888, 894 (1994), "[t]o state a cause of action for conspiracy, a plaintiff must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, but also that such act was tortious or unlawful in character." *See also Cumis Ins. Soc'y, Inc.* v. *Peters*, 983 F. Supp. 787, 794 (N.D. Ill. 1997) ("to state a cause of action for civil conspiracy, the plaintiff must sufficiently allege that an underlying wrong existed."). Thus, an agreement and overt acts that cause injury to another are insufficient; rather, the overt acts must themselves constitute independent, tortious conduct.

Plaintiff's conspiracy theory is that Dennis and Shirlee made an agreement to prevent plaintiff from collecting his judgment against Dennis. The tortious or unlawful conduct is based on allegations that Shirlee applied for bank loans without disclosing Dennis's "financial

5

contributions to and equity in" the properties, his "active participation in the management of" Amzo, and his actual earnings and income by "having them falsely appear to be Shirlee's earnings and income" in Shirlee's "W-2s and elsewhere[.]" (Sec. Am. Compl. ¶¶ 41-42.) Further, he alleges that Dennis and Shirlee have placed all their assets and income in land trusts or in Shirlee's name so as to defeat plaintiff's judgment. (*Id.* ¶¶ 43-44.)

Arguing that this alleged conduct is independently tortious, plaintiff relies on, *inter alia*, *Village of San Jose v. McWilliams*, 284 F.3d 785 (7th Cir. 2002), an appeal of an adversary proceeding from bankruptcy court, where the Seventh Circuit listed several factors that, if proven, could show the debtor's actual intent to defraud the creditor such that the court would set aside the discharge of the debt pursuant to 11 U.S.C. § 727(a)(2).[1] Although the Seventh Circuit

---

[1]In *Village of San Jose*, the Village, the lien creditor, objected to the debtors-defendants' bankruptcy petition and discharge of the debt in the bankruptcy court. The Village claimed that, within one year of filing their Chapter 7 petition, the debtors transferred property to their grandchildren for "$1.00 and love" in an attempt to defraud the Village. The Seventh Circuit discussed the four elements under 11 U.S.C. § 727(a)(2) that a creditor must establish before a court will set aside a discharge, namely, "(1) that the act complained of was done at a time subsequent to one year before the date of filing of the petition; (2) with actual intent to hinder, delay, or defraud a creditor . . . ; (3) that the act was that of the debtor or his duly authorized agent; and (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done." 284 F.3d at 791.

The court focused on whether the Village met the second element. The court determined that actual intent to defraud is difficult to prove but may be shown through circumstantial evidence. As such, it adopted a list of factors set forth by the Fifth Circuit in *Pavy v. Chastant*, 873 F.2d 89, 91 (5th Cir. 1989). These six factors are: (1) the lack of or inadequacy of consideration; (2) the family, friendship, or close relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset or financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. *Village of San Jose*, 284 F.3d at 791. The court determined that once the creditor meets one or some of these factors, the creditor establishes a prima facie case that the debtor acted with intent to defraud and shifts the burden to the debtor to demonstrate that he lacked such intent. *Id.*

The court determined that the Village produced circumstantial evidence such as that the debtors prevented the Village from obtaining the properties to satisfy the debts based on, *inter alia*, the debtors' purported transfer of the properties to their grandchildren. *Id.* at 791, 794. Although the debtors eventually disclosed the transfer and their grandchildren transferred the properties back to them, the court disagreed with the bankruptcy court's finding

(continued...)

in *Village of San Jose* identifies certain badges of fraudulent intent, obviously the Seventh Circuit was not creating an independent cause of action of actual intent to defraud. Rather, to state a cause of action for fraud, the plaintiff must allege:

> (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.

*Cumis Ins. Soc'y*, 983 F. Supp. at 791.

The court has already determined that the facts relating to bank financing do not constitute fraud. In the original complaint, plaintiff alleged defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (Order of Oct. 29, 2002.) Plaintiff argued that the pattern of racketeering activity consisted of the Ambroziaks' engaging in bank fraud within 18 U.S.C. § 1344 because Shirlee submitted bank loan applications without disclosing Dennis's role or beneficial interest in Amzo. On defendants' motion to dismiss that claim, this court disagreed with plaintiff, explaining "it is obvious that no bank or financial institution has been defrauded by the Ambroziaks. Moreover, the alleged omissions are not material to the transactions because the loans were made to Amzo, to which Dennis is a legal stranger." (Order of Oct. 29, 2002.)

Here, for the same reasons that plaintiff failed to allege facts that showed bank fraud under his former RICO claim, plaintiff fails to allege overt acts in furtherance of the conspiracy

---

[1](...continued)
that these actions cured the debtors' earlier fraudulent conduct because there was no harm done. *Id.* at 794. Instead, the court found that the debtors were not entitled to protection under the Bankruptcy Code and thus reversed and remanded the case.

that constitute fraud. Furthermore, to the extent plaintiff rests his claim on the Ambroziaks' creation of trusts, Dennis's failure to take a salary from Amzo and Dennis's placement of assets in other family members' names, plaintiff does not demonstrate that any of this conduct was tortious. Rather, plaintiff only alleges that this conduct injured him. As such, the court will dismiss Count I.

**B.    Count II: Violation of the UFTA**

Defendants assert that plaintiff fails to allege facts that show "fraud in fact" under the UFTA, 740 ILCS 160/5(a)(1) or "fraud in law" under the UFTA, 740 ILCS 160/5(a)(2) and 160/6(a).[2] Specifically, defendants assert that (1) plaintiff fails to allege facts that show fraudulent transfer because he only alleges facts that show Dennis commingled his assets with Shirlee's assets; (2) plaintiff cannot rely on a debtor-creditor relationship between plaintiff and Dennis to show a debtor-creditor relationship between plaintiff and the other defendants, citing *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 629-30 (7th Cir. 2002)

---

[2] 740 ILCS 160/5 (Transfer or obligation fraudulent as to creditor--Claim arising before or after transfer) states, in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, . . . .

Moreover, 740 ILCS 160/6 (Transfer or obligation fraudulent as to creditor--Claim arising before the transfer) states, in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation . . . .

8

(determining that the plaintiff could not sue the individual defendants, all former corporate officers of the debtor, under the UFTA because they did not hold the status of "insiders" for purposes of assigning liability); and (3) plaintiff fails to allege a fraudulent transfer that occurred within the four-year statute of limitations, citing 740 ILCS 160/10[3] and *Levy* v. *Markal Sales Corp.*, 311 Ill. App. 3d 552, 554-55, 724 N.E.2d 1008, 1010 (1st Dist. 2002) ("Section 10(a) explicitly provides that a cause of action attacking a transfer as fraudulent under paragraph 1(a) of section 5 must be brought within 4 years '*after the transfer was made.*'") (emphasis in original).

Plaintiff responds only to (1) and (3). Plaintiff asserts that fraudulent transfer is found in Dennis's concealment of his actual earnings and income under Shirlee's name. Plaintiff further asserts that "every time Dennis made a sale for Amzo, or ordered supplies, or did any other act that benefitted the company, it amounted to a new fraudulent transfer to Shirlee or to Amzo (of which Shirlee is the sole owner of record) of the reasonable value of his services." (Pl. Resp. at 5.) Moreover, because Dennis's purported misconduct is continual, plaintiff argues that the statute of limitations does not bar his claim. Plaintiff also asserts that he was unable to uncover defendants' fraudulent concealment until "he began a new Citation to Discover Asserts

---

[3] 740 ILCS 160/10 states:

A cause of action with respect to a fraudulent transfer or obligation under [the UFTA] is extinguished unless action is brought:

(a) under paragraph (1) of subsection (a) of Section 5, within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
(b) under paragraph (2) of subsection (a) of Section 5 or subsection (a) of Section 6, within 4 years after the transfer was made or the obligation was incurred; or
(c) under subsection (b) of Section 6, within one year after the transfer was made or the obligation was incurred.

9

proceeding against Dennis in late 2000[,]" where plaintiff learned Dennis was working for Amzo and was taking no salary or other compensation according to Amzo's records. (Pl. Resp. at 7);[4] *see In re Nowicki*, 202 B.R. 729, 736 (Bankr. N.D. Ill. 1996) ("The proper method under the Illinois Code of Civil Procedure to perfect a lien in intangible personal property is via a citation to discover assets, under 735 ILCS 5/2-1402."); *see also King v. Ionization Int'l, Inc.*, 825 F.2d 1180, 1188 (7th Cir. 1987) ("A citation proceeding is apparently the only way to levy judgment in Illinois against a judgment debtor's intangible assets, such as a patent license. * * * If collection is not accomplished within six months, the citation proceeding terminates unless it has been extended."). Because plaintiff filed this instant action within one year of that discovery, he argues that his claim is timely.

Plaintiff's allegations do not amount to fraudulent transfer. Where plaintiff points to Dennis's involvement in Amzo as constituting fraudulent transfer, he relies on Dennis's human capital. *Cf. Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1253 (7th Cir. 1995) ("People rather than firms hold expertise (economists call it human capital for good reason)"). If it is assumed that Dennis donates his services to Amzo without compensation and that benefit inures back to him through Shirlee in the form of money, plaintiff provides no authority for the proposition that such "transfer" of human capital may constitute a fraudulent transfer.[5]

---

[4]Furthermore, plaintiff asserts that when he "deposed Dennis on January 20, 1994, [Dennis] concealed all of his involvement both with Amzo and with the purchase of the Ambroziak[s'] luxury estate home in Bull Valley two years earlier." (Pl. Resp. at 2.) Plaintiff makes these assertions in response to defendants' argument that his constructive trust claim is time-barred. These assertions, however, are applicable here as well.

[5]Human capital is not to be confused with "goodwill," which is an intangible asset. *Cf. In the Matter of Prince*, 85 F.3d 314, 323, 323 n.5 (7th Cir. 1996) ("Dr. Prince's goodwill is not intrinsically part of his human
(continued...)

10

As such, although, as this court has previously stated, the Ambroziaks' conduct is not admirable, plaintiff has failed to state a claim under the UFTA.[6] Therefore, Count II will also be dismissed.

## C. Count III: Imposition of a constructive trust

The court imposes a constructive trust where

> the party in possession of wrongfully acquired property [is declared] the constructive trustee of that property . . . because it would be inequitable for that party to retain possession of the property. The sole duty of the constructive trustee is to transfer title and possession of the wrongfully acquired property to the beneficiary.

*Suttles* v. *Vogel*, 126 Ill. 2d 186, 193, 533 N.E.2d 901, 904 (1988). "A constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing . . . such as fraud, breach of fiduciary duty, duress, coercion or mistake." *Id.* at 194, 533 N.E.2d at 905. A court imposes a constructive trust either (1) where actual or constructive fraud provides equitable grounds for raising the trust or (2) where there is a breach of a fiduciary duty. *Id.* Plaintiff relies on his claim of fraud as the basis for the imposition of a constructive trust, but, as indicated

---

[5](...continued)
capital, but rather is a separate intangible capital asset of the [orthodontics] practice, like a trademark would be."); *In re Fitch*, 174 B.R. 96, 103 (Bankr. S.D. Ill. 1994) ("The 'goodwill' of a business may be defined as the advantage the business has over competitors as a result of its having been carried on in a particular place or by a particular person for a period of time. . . ."). Here, because plaintiff alleges facts that show Dennis owns no businesses and is a legal stranger to Amzo, he cannot show that a fraudulent transfer occurred between Dennis and Amzo based on goodwill. *See In re Fitch*, 174 B.R. at 103 ("While goodwill is an intangible asset, it cannot be separated from the tangible assets of the business and exists only as an incident of a going business.").

[6]Nonetheless, the court further notes that plaintiff fails to show how his debtor-creditor relationship with Dennis creates such a relationship with the other defendants, particularly Amzo. (See Order of Oct. 29, 2002, stating "Amzo is not liable for Dennis's debts and Dennis is not liable for Amzo's debts.") The court, however, does not address defendants' statute of limitations argument because, even though this argument may be viewed as a threshold issue, it is dependent on facts such as when the claim was or should have been discovered. Such an argument is better addressed on a motion for summary judgment. *See Clark* v. *City of Braidwood*, 318 F.3d 764, 767-68 (7th Cir. 2003) (vacating the lower court's dismissal of plaintiff's civil rights claim as time-barred because the plaintiff should be allowed to prove alleged facts that show his claim is not barred by the statute of limitations).

above, he has not been able to plead a claim of fraud. In short, the reasons that doom plaintiff's civil conspiracy claim also defeat his claim for constructive trust. Thus, the court will dismiss Count III.

### ORDER

Wherefore, the court grants defendants' motion to dismiss plaintiff's second amended complaint [#55] with prejudice. The court strikes the trial date of Monday, May 27, 2003. This case is terminated.

ENTER: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: May 16, 2003